IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. __________

CATHERINE A. SELINSKY, an individual,

Plaintiff,

v.

MARCUS THEATRES CORPORATION, a Wisconsin corporation, f/k/a
MOVIE TAVERN, INC., a Texas corporation f/k/a
MOVIE TAVERN PARTNERS, L.P., a Texas limited partnership;
AT SEVEN HILLS AURORA CO, LLC, an Arizona limited liability company; and
ARCITERRA COMPANIES, LLC f/k/a ARCITERRA GROUP, LLC, an Arizona limited liability company,

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Catherine A. Selinsky, through her undersigned counsel, The Hustead Law Firm, A Professional Corporation, hereby submits her Complaint and Jury Demand against: 1) Marcus Theatres Corporation, formerly known as Movie Tavern, Inc., formerly known as Movie Tavern Partners, L.P.; 2) AT SEVEN HILLS AURORA CO, LLC; and 3) ARCITERRA COMPANIES, LLC, formerly known as ArciTerra Group, LLC, for 1) violating Colorado's Premises Liability Act pursuant to C.R.S. § 13-21-115 *et seq.*; 2) negligence; and 3) declaratory and injunctive relief, attorneys' fees, expenses, and costs (including, but not limited to, court costs and expert fees) pursuant to 42 U.S.C. § 12182 *et. seq*., and the 2010 Americans with Disabilities Act ("ADA"), and states as follows:

**PARTIES**

1. Catherine A. Selinsky ("Plaintiff"), is an individual who resides at 20488 East

Hamilton Circle, Aurora, Colorado 80013 and who has expressed an intent to remain in Colorado indefinitely.

2. Marcus Theatres Corporation is a corporation organized and incorporated under the laws of the State of Wisconsin with a principal place of business at 100 East Wisconsin Avenue, Suite 1900, Milwaukee, Wisconsin 53202.

3. Marcus Theatres Corporation was formerly known as Movie Tavern, Inc., which was a corporation organized and incorporated under the laws of the State of Texas with a principal place of business at 935 Gravier Street, Suite 1200, New Orleans, Louisiana 70112.

4. Movie Tavern, Inc. was formerly known as Movie Tavern Partners, L.P., which was a corporation organized and incorporated under the laws of the State of Texas with a principal place of business at 935 Gravier Street, Suite 1200, New Orleans, Louisiana 70112 (Marcus Theatres Corporation, Movie Tavern, Inc., and Movie Tavern Partners, L.P. are collectively referred to herein as "Movie Tavern").

5. AT SEVEN HILLS AURORA CO, LLC ("Owner"), is an Arizona limited liability company that, at all times alleged herein, conducted business in the State of Colorado and has a principal place of business at 2701 East Camelback Road, Suite 150, Phoenix, Arizona 85016.

6. Based on Owner's Articles of Organization, and upon information and belief after a diligent search of publicly available information, the sole member of Owner is ARCITERRA STRATEGIC RETAIL-SEVEN HILLS CO, LLC, which is also an Arizona limited liability company that has a principal place of business at 2720 East Camelback Road, Suite 220, Phoenix, Arizona 85016.

7. Upon information and belief after a diligent search of publicly available information, the sole member of ARCITERRA STRATEGIC RETAIL-SEVEN HILLS CO, LLC

is ArciTerra Strategic Retail Advisor, LLC, which is also an Arizona limited liability company that has a principal place of business at 2720 East Camelback Road, Suite 220, Phoenix, Arizona 85016.

8. Upon information and belief after a diligent search of publicly available information, the two members of ArciTerra Strategic Retail Advisor, LLC are JMMAL Investments, LLC, which is an Arizona limited liability company that has a principal place of business at 2720 East Camelback Road, Suite 220, Phoenix, Arizona 85016, and MML Investments, LLC, which is an Arizona limited liability company that has a principal place of business at 2720 East Camelback Road, Suite 220, Phoenix, Arizona 85016.

9. Upon information and belief after a diligent search of publicly available information, the sole member of both JMMAL Investments, LLC and MML Investments, LLC is Wawasee Family Investments Limited Partnership, which is an Arizona limited partnership that has a principal place of business at 1631 East Cheery Lynn Road, Phoenix, Arizona 85016.

10. Upon information and belief after a diligent search of publicly available information, the two members of Wawasee Family Investments Limited Partnership are Marcia M. Larmore and Robert H. Larmore, individuals who reside at 3127 La Balme Trail Fort Wayne, Indiana 46804, and who have expressed an intent to remain in Indiana indefinitely.

11. ARCITERRA COMPANIES, LLC formerly known as ArciTerra Group, LLC ("Manager") is an Arizona limited liability company that, at all times alleged herein, conducted business in the State of Colorado and has a principal place of business at 2720 East Camelback Road, Suite 220, Phoenix, Arizona 85016.

12. Upon information and belief after a diligent search of publicly available information, the sole member of Manager is CSL Investments, LLC, which is an Indiana limited

liability company that has a principal place of business at 2720 East Camelback Road, Suite 220, Phoenix, Arizona 85016.

13. Upon information and belief after a diligent search of publicly available information, the sole member of CSL Investments, LLC is Jonathan M. Larmore, an individual who resides at 5324 East Mariposa Street, Phoenix, Arizona 85018 and who has expressed an intent to remain in Arizona indefinitely.

**JURISDICTION AND VENUE**

14. This Court is vested with original jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under Title 42 U.S.C. § 12182 *et. seq*., based on Movie Tavern, Owner, and Manager's (collectively "Defendants") violations of Title III of the ADA. *See also* 28 U.S.C. §§ 2201 and 2202 as well as the 2010 ADA Standards.

15. This Court has supplemental jurisdiction based upon 28 U.S.C. § 1367 because in this civil action in which this Court has original jurisdiction, this Court has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

16. Plaintiff's claims for violation of the Premises Liability Act and negligence (as alleged below) are related to the ADA claims (also alleged below) because all violations of the Premises Liability Act/ADA and negligence occurred on the same commercial property at the same movie theater, which was owned and leased by the Defendants in this case.

17. This Court also has subject matter jurisdiction over this action and these parties based upon 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs of suit. As set forth above, Plaintiff is a citizen of Colorado while the Defendants are all citizens of states

outside of Colorado.

18. This Court has personal jurisdiction over Defendants because they have established continuous, systematic, and purposeful contacts with the State of Colorado by transacting business here, owning real estate here, and otherwise being involved in and/or running the Movie Tavern in Aurora, Colorado.

19. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of Colorado. Additionally, venue is proper in Colorado under 28 U.S.C. §1391(b)(3) because Movie Tavern, Owner, and Property Manager are subject to personal jurisdiction in the District of Colorado.

## GENERAL ALLEGATIONS

20. Plaintiff hereby realleges the allegations set forth in the foregoing paragraphs and incorporates them as if fully set forth herein.

### A. The Property

21. On or about June 30, 2005, Owner purchased that certain parcel of real property commonly known as 18511-18883 East Hampden Avenue, Aurora, Colorado 80013 together with improvements constructed thereon generally described as a 137,909 square foot retail center (the "Property").

22. The real property with the street address of 18605 East Hampden Avenue, Aurora, Colorado 80013 is a movie theater (the "Theater") located on the Property.

23. On or about September 11, 2006, Owner entered into that certain lease agreement with Movie Tavern Partners, L.P. to lease and operate the Theater.

24. On or about April 4, 2011, Movie Tavern Partners, L.P. changed its name to Movie

Tavern, Inc.

25. On or about June 29, 2015, Owner entered into that certain property management agreement with Manager to manage the Property.

26. On or about February 1, 2019, Marcus Theatres Corporation completed its acquisition of Movie Tavern, Inc.'s assets.

27. Thus, Owner owns the Property, the Movie Tavern leases and operates the Theater, and the Manager managed the Property.

**B. Plaintiff**

28. Plaintiff was born with a medical condition known as osteogenesis imperfecta.

29. Osteogenesis imperfecta is a genetic bone disorder that causes bones to break more easily and can cause bone deformities.

30. Currently, there is not a cure for osteogenesis imperfecta and treatment is based on preventing fractures.

31. When someone with osteogenesis imperfecta does fracture a bone, it is important that the bones are treated by a specialist to ensure proper healing.

32. Osteogenesis imperfecta has required Plaintiff to use a manual wheelchair with a seatbelt for most of her life.

33. Plaintiff was raised in and around Denver, Colorado, she has spent much of her life in Aurora, Colorado, and she currently resides in Aurora, Colorado with an intent to remain in Colorado indefinitely.

**C. The Incident**

34. In the afternoon of December 21, 2019, Plaintiff decided to see a movie before traveling out-of-town for the holidays.

35. Plaintiff paid $11.32 on Fandango for a ticket to see "Richard Jewell," which was showing at the Movie Tavern that night.

36. Plaintiff had never before visited the Movie Tavern.

37. Plaintiff left her house around 6:30 PM and stopped at a nearby Starbucks for some snacks.

38. Around 7:00 PM, she pulled into a handicap parking spot on the Property located immediately southeast from the Theater.

39. When Plaintiff visited the Theater/Property on December 21, 2019, she suffered from a "qualified disability" under the ADA and required accessible means of entry at the Theater/Property.

40. Plaintiff had difficulty finding the wheelchair ramp to the Theater because of inadequate lighting outside of the Theater and lack of signage directing her to the ramp.

41. Plaintiff remembers the only way she was finally able to find the ramp was because a car's headlights shone on the ramp as it drove by.

42. Plaintiff wheeled up the ramp from the street towards the Theater's southeast entrance.

43. There were not any signs directing Plaintiff to the ramp.

44. The curb was not painted.

45. The ramp was not painted.

46. The ramp did not have any kind of detectable warning surface, that one typically encounters in public places.

47. After making it up the ramp, Plaintiff then entered the Theater, showed the Theater employee her electronic ticket on her phone, and went straight to her seat.

48. After the film ended around 9:30 PM, Plaintiff followed the other patrons toward the Theater's exit.

49. As she did so, there were several people walking to her left and in front of her.

50. From her vantage point in a sitting position, she had no real visual of the doors.

51. There were TVs mounted on her right side, at a higher visual, and there were black poles tethered to a fabric divider on her left.

52. Plaintiff saw the other patrons in the Theater exiting through the doors located on the south side of the Theater.

53. When Plaintiff reached the doors at the southern exit of the Theater, she was not aware that there were additional doors to her left (from which she entered), nor was there an opportunity to go to the left at all because of the standing divider.

54. Upon Plaintiff's exit through the southern doors at the Theater, she was immediately confronted with the fact that she did not know where the ramp was, along with the poor lighting.

55. At that time, it was very dark on the Property outside of the Theater, and the lights on the Theater's exterior were either not fully illuminated or not fully functioning.

56. At that time, the curb was not painted.

57. At that time, there were not any signs directing Plaintiff to a ramp.

58. At that time, a stone wall/pillar obstructed Plaintiff's view to the ramp.

59. At that time, the Property did not have a minimum circular turning clearance for a person with a disability due to a wall/pillar between Plaintiff and the ramp.

60. At that time, the Theater/Property did not have a continuous path of travel connecting all essential elements of the Theater/Property.

61. At that time, the Theater/Property did not have accessible routes with a ramp or curb ramps.

62. At that time, the Theater/Property there were inaccessible routes that did not have signs indicating the location of the nearest accessible entrance.

63. In her effort to locate the ramp, she fell off of the curb that she did not know was even there.

64. Still buckled into her wheelchair, she fell face-forward over the curb, crashing her face, shoulders, arms, and legs into the pavement beneath her.

65. Plaintiff fractured five bones and underwent two surgeries.

66. Plaintiff spent the next eighty-three consecutive days in two hospitals and one long-term care facility.

67. As a result of Defendants' actions/inactions, Plaintiff has suffered and will continue to suffer economic damages, non-economic damages, and damages relating to her physical impairment/disfigurement in amounts to be determined at trial.

68. Plaintiff has incurred and continues to incur attorneys' fees and costs to prosecute this action.

69. Plaintiff was denied full and equal access and full and equal enjoyment of the Theater/Property's facilities, services, and amenities within the Theater/Property, even though she was a "bona fide patron."

70. Plaintiff would like to avail herself of the services offered at the Theater/Property in the future once Defendants make the necessary modifications to the Theater/Property or Defendants modify their policies/practices to accommodate individuals who have physical disabilities.

71. Plaintiff would like to be able to be a patron of the Theater/Property in the future and be able to enjoy the goods and services that are available to the able-bodied public, but she is precluded from doing so as a result of Defendants' discriminatory conduct as described herein.

72. Plaintiff will continue to be precluded from utilizing the Theater/Property until corrective measures are taken at the Theater/Property to eliminate the discrimination against persons with physical disabilities.

73. Plaintiff, in her individual capacity, encountered barriers to access at the Theater/Property.

74. As a result of Plaintiff encountering the barriers to access at the Theater/Property, she suffered legal harm and legal injury.

75. Plaintiff will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violation at the Theater/Property set forth herein.

76. It is Plaintiff's belief that said violation will not be corrected without Court intervention, and thus Plaintiff will suffer legal harm and injury in the near future.

**FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
**Violations of Colorado's Premises Liability Act C.R.S. § 13-21-115 *et seq.***

77. Plaintiff hereby realleges the allegations set forth in the foregoing paragraphs and incorporates them as if fully set forth herein.

78. At all times alleged herein, Defendants were landowners of the Theater because they were authorized agents or people in possession of the Theater, legally responsible for the condition of the Theater, and for the activities conducted or circumstances existing on the Theater.

79. At all times alleged herein, Defendants were landowners of the Property because they were authorized agents or people in possession of the Property, legally responsible for the condition of the Property, and for the activities conducted or circumstances existing on the

Property.

80. On December 21, 2019, Plaintiff was an invitee at the Theater/Property because she entered and remained on the land of the Theater/Property to transact business in which Plaintiff and Defendant were mutually interested.

81. On December 21, 2019, Plaintiff was an invitee at the Theater/Property because she entered and remained on the land of the Theater/Property in response to the Defendants' express and/or implied representation that the public is requested, expected, or intended to enter or remain on the land of the Theater/Property.

82. On December 21, 2019, at least the following dangers (collectively referred to as the "Dangers") were located on the Theater/Property:

a. the exterior lighting was inadequate or not functioning properly;

b. the curb between the Theater and the parking lot was not painted;

c. the ramp between the Theater and the parking lot was not painted;

d. the ramp between the Theater and the parking lot did not have any kind of detectable warning surface;

e. there were not any signs directing Plaintiff to a ramp;

f. a stone wall/pillar obstructed Plaintiff's view to the ramp;

g. the sidewalks on the exterior of the Theater on the Property did not have a minimum circular turning clearance for a person with a disability;

h. there was not a continuous path of travel connecting all essential elements of the Theater/Property;

i. there were not accessible routes with a ramp or curb ramps;

j. there were inaccessible routes that did not have signs indicating the location

of the nearest accessible entrance to the Theater;

k. the queue barriers in the Theater funneled Plaintiff to the exit doors facing due south, which were different than those which Plaintiff entered, but appeared nearly identical to the doors that she entered the Theater from;

l. the queue barriers in the Theater funneled Plaintiff to the exit doors facing due south, where there was not a ramp/curb ramp and the area was inadequately lit.

83. Defendants actually knew about the Dangers.

84. Defendants should have known about the Dangers.

85. Defendants failed to use reasonable care to protect against the Dangers.

86. Defendants consciously conspired to pursue a common plan or design to create the Dangers.

87. Defendants deliberately pursued a common plan or design to create the Dangers.

88. Defendants' failure to use reasonable care to protect against the Dangers jointly and severally caused Plaintiff injuries, damages, and losses including economic damages, non-economic damages, and damages relating to her physical impairment/disfigurement in amounts to be determined at trial.

**SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
**Negligence**

89. Plaintiff hereby realleges the allegations set forth in the foregoing paragraphs and incorporates them as if fully set forth herein.

90. Defendants owed a duty to Plaintiff to protect her from the Dangers.

91. Defendants breached their duty to Plaintiff by failing to, among other things:

a. have adequate exterior lighting at the Theater/Property;

b. have a painted curb between the Theater and the parking lot;

c. have a painted ramp between the Theater and the parking lot;

d. have a detectable warning surface on the ramp between the Theater and the parking lot;

e. have signs directing Plaintiff to a ramp;

f. clear the obstructions presented by the stone wall/pillar;

g. have a minimum circular turning clearance on the sidewalks for a person with a disability;

h. have a continuous path of travel connecting all essential elements of the Theater/Property;

i. have accessible routes with a ramp or curb ramps;

j. eliminate inaccessible routes that did not have signs indicating the location of the nearest accessible entrance to the Theater;

k. the queue barriers in the Theater funneled Plaintiff to the exit doors facing due south, which were different than those which Plaintiff entered, but appeared nearly identical to the doors that she entered the Theater from;

l. the queue barriers in the Theater funneled Plaintiff to the exit doors facing due south, where there was not a ramp/curb ramp and the area was inadequately lit.

92. Defendants consciously conspired to pursue a common plan or design to create the Dangers.

93. Defendants deliberately pursued a common plan or design to create the Dangers.

94. Defendants' breaches of their duties to Plaintiff jointly and severally caused

Plaintiff damages including economic damages, non-economic damages, and damages relating to her physical impairment/disfigurement in amounts to be determined at trial.

**THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
**Violations of the ADA under 42 U.S.C. § 12182 *et. seq*., and the 2010 ADA**

95. Plaintiff hereby realleges the allegations set forth in the foregoing paragraphs and incorporates them as if fully set forth herein.

96. On July 26, 1990, Congress enacted the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et. seq*.

97. Commercial enterprises were provided one and one-half (1.5) years from enactment of the ADA statute to implement its requirements.

98. Plaintiff has suffered from a "qualified disability" under the ADA her whole life and she required accessible means of entry at the Theater/Property on December 21, 2019.

99. Pursuant to 42 U.S.C. §12182, 28 C.F.R. § 36.104 and the 2010 ADA Standards, the Theater and the Property are places of public accommodation covered by the ADA because the Theater and the Property own, lease, and/or operate places that provide services to the general public.

100. The Theater and the Property must comply with the standards required by 42 U.S.C. §12182, 28 C.F.R. § 36.104 and the 2010 ADA Standards pertaining to places of public accommodation.

101. Defendants have discriminated and continue to discriminate against Plaintiff and others who are similarly situated, by denying access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations located at the Theater/Property, as prohibited by 42 U.S.C. § 12182, and 42 U.S.C. § 12101 *et. seq.*, and by failing to remove architectural barriers pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv).

102. Plaintiff has visited the Theater/Property and has been denied full and safe equal access to the facilities and, therefore, she has suffered injury in fact.

103. Plaintiff intends to return and enjoy the goods and/or services at the Theater/Property on a spontaneous, full, and equal basis.

104. Plaintiff, however, is precluded from doing so by Defendants' failure and refusal to provide persons with disabilities with full and equal access to their facilities at the Theater/Property.

105. Plaintiff continues to suffer from discrimination and injury due to the architectural barriers that are in violation of the ADA.

106. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General promulgated Federal Regulations to implement the requirements of the ADA. *See* 28 C.F.R. § 36 and its successor the 2010 ADA Standards ADA Accessibility Guidelines ("ADAAG"), 28 C.F.R. § 36, under which said Department may obtain civil penalties of up to $55,000.00 for the first violation and $110,000.00 for each subsequent violation.

107. Defendants are, jointly and severally, in violation of 42 U.S.C. §12182 *et. seq.* and the 2010 ADA Standards *et. seq.*, and is discriminating against Plaintiff as a result of, *inter alia*, by failing to have the following accommodations at the Theater/Property:[1]

a. minimum circular turning clearance for a person with a disability (ADAAG § 4.2 *et seq.*; § 36.304 *et seq.*; § A4.2.3; § 304; );

b. a continuous path of travel connecting all essential elements of the facility (ADAAG § 36.304 *et seq.*; § 36.403 *et seq.*; § 402 *et seq.*);

[1] In instances where the 2010 ADAAG standard does not apply, the 1991 ADAAG standard applies to the violations.

c. accessible routes with a ramp or curb ramps (ADAAG § 4.5 *et seq*; § 4.7 *et seq*.; § 4.29.2; § 4.8 *et seq*.; § 36.304 *et seq*.; § 36.403 *et seq*.; § 206 *et seq*.§ 406 *et seq*.);

d. and inaccessible routes must have signs indicating the location of the nearest accessible entrance (ADAAG § 4.1 *et seq*; 4.30 *et seq*.; § 36.304 *et seq.;* § 216 *et seq*. § 703 *et seq*.);

108. Defendants have failed to eliminate the ADA violations.

109. Defendants have knowledge of the ADA violations.

110. Pursuant to the ADA, 42 U.S.C. § 12101 *et. seq.*, and 28 C.F.R. § 36.304, Defendants were required to make the Theater/Property, a place of public accommodation, accessible to persons with disabilities by January 28, 1992.

111. As of the date of the filing of this Complaint, Defendants have failed to comply with this mandate.

112. Plaintiff has retained undersigned counsel for the filing and prosecution of this action.

113. Plaintiff is entitled to have her reasonable attorneys' fees, costs, and expenses paid by Defendants, pursuant to 42 U.S.C. § 12205.

114. The ADA violations at the Theater/Property are able to be modified in order to bring the Theater/Property into compliance with the ADA.

115. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including entering an order to alter the Theater/Property to make Defendants' joint and several ADA violations (known and unknown) readily accessible to and useable by individuals with disabilities to the extent required by the ADA and closing the

Theater/Property until the requisite modifications are completed.

**JURY DEMAND**

**PLAINTIFF DEMANDS A TRIAL TO A JURY OF SIX ON ALL ISSUES SO TRIABLE.**

WHEREFORE, Plaintiff requests judgment enter against Defendants, jointly and severally, as follows:

- For Plaintiff's injuries, damages, and losses including her economic damages, non-economic damages, and damages relating to her physical impairment/disfigurement in amounts to be determined at trial, including pre- and post-judgment interest;
- This Court declare that the Theater/Property owned, operated, and/or controlled by Defendants is in violation of the ADA;
- This Court enter an Order requiring Defendants to alter the Theater/Property to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;
- This Court enter an Order directing Defendants to evaluate and neutralize their policies, practices, and procedures toward persons with disabilities, for such reasonable time so as to allow Defendants to undertake and complete corrective procedures to the Theater/Property;
- This Court award reasonable attorneys' fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the Plaintiff; and
- This Court award such other and further relief as it may deem necessary, just, and proper.

Respectfully submitted this 20th day of May, 2021.

THE HUSTEAD LAW FIRM
*A Professional Corporation*
*Original signature is on file at*
*The Hustead Law Firm, A Professional Corporation*

*s/ Connor L. Cantrell*

Patrick Q. Hustead, Esq.
Connor L. Cantrell, Esq.
Dane C. Mueller, Esq.
THE HUSTEAD LAW FIRM, *A Professional Corporation*
4643 South Ulster Street, Suite 1250
Denver, Colorado 80237
Telephone: (303) 721-5000
pqh@thlf.com
clc@thlf.com
dcm@thlf.com
*Attorneys for Plaintiff*